## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

1. Zhuliang YE,
   (A#076100933)

   *Petitioner*,

   v.

**2.** Pamela BONDI, in her official capacity as U.S. Attorney General;

3. Marcos CHARLES, in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;

4. Todd M. LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement;

5. Kristi NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security

6. Douglas M. GOODWATER, in his official capacity as Director of ICE Oklahoma City Field Office

7. Scarlet GRANT, in her official capacity as Warden of the Cimarron Correctional Facility;

   *Respondents.*

**No: 25-cv-00534-CVE-MTS**

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1

1.      Petitioner Zhuliang Ye ("Mr. Ye") hereby petitions this Court under 28 U.S.C. § 2241, et seq., to issue a Writ of Habeas Corpus ordering Mr. Ye's immediate release from the unlawful custody of the Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE").

2.      This case presents an egregious violation of statutory and constitutional limits on immigration detention that threatens the liberty of all individuals subject to immigration enforcement. Mr. Ye's removal order became administratively final on March 26, 2002—over twenty-three years ago. The 90-day "removal period" mandated by 8 U.S.C. § 1231(a)(1) expired on June 24, 2002. The six-month presumptively reasonable detention period under *Zadvydas v. Davis*, 533 U.S. 678 (2001), expired on September 26, 2002— also over twenty-three years ago.

3.      Despite these clear temporal limitations, ICE arrested and detained Mr. Ye on September 16, 2025, claiming authority that expired two decades ago. The government's position—that it can warehouse detention authority indefinitely and deploy it at will decades later—would eviscerate the statutory scheme Congress created and render meaningless the Supreme Court's constitutional safeguards against indefinite detention.

**JURISDICTION**

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question jurisdiction), the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and Article I, Section 9, Clause 2 of the U.S. Constitution. See *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

**VENUE**

5.      Venue is proper in this Court as Mr. Ye is currently detained at Cimarron Correctional Facility, 3700 S. Kings Highway, Cushing, OK 74023, which is within this judicial district.

**PARTIES**

6.      Petitioner Zhuliang Ye ("Mr. Ye"),  is a 60-year-old native and citizen of the People's Republic of China currently in ICE custody at Cimarron Correctional Facility.

7.      Respondent Pamela Bondi is the Attorney General of the United States, charged with enforcement of the laws of the United States. She is sued in her official capacity only.

8.      Respondent Marcos Charles is the Acting Executive Associate Director of Enforcement and Removal Operations, responsible for overseeing

ICE's detention and removal operations nationwide. He is sued in his official capacity only.

9.    Respondent Todd M. Lyons is the Acting Director of Immigration and Customs Enforcement, charged with the overall administration and operation of ICE, including oversight of enforcement and removal operations, detention policies, and implementation of immigration enforcement priorities nationwide. He is sued in his official capacity only.

10.    Respondent Kristi Noem is the Secretary of the Department of Homeland Security, whose responsibilities include administering and enforcing immigration laws pursuant to 8 U.S.C. §§ 1103(a)(1)-(3). She is sued in her official capacity only.

11.    Respondent Douglas M. Goodwater is the Director of the ICE Oklahoma City Field Office, responsible for the administration and enforcement of ICE functions relating to detention and removal of aliens in Oklahoma, including determinations on whether and where Petitioner is to be detained. He is sued in his official capacity only.

12.    Respondent Scarlet Grant is the Warden of Cimarron Correctional Facility and has immediate custody of Petitioner. She is sued in her official capacity only.

## FACTUAL AND PROCEDURAL BACKGROUND

**Mr. Ye's Immigration History**

13.    Mr. Ye entered the United States on May 17, 1998, fleeing political persecution in China. Within months of his arrival, he filed an application for political asylum, seeking protection under United States law.

14.    On June 28, 1999, an Immigration Judge in New York denied his applications for relief and ordered him removed to China.

15.    On March 26, 2002, the Board of Immigration Appeals ("BIA") dismissed his appeal, rendering his removal order administratively final on that date. This date—March 26, 2002—triggers all statutory time limits governing Mr. Jiang's detention authority.

**The Statutory Removal Period Expired Over Twenty Years Ago**

17.    Under 8 U.S.C. § 1231(a)(1)(B)(i), the government's 90-day removal period began on March 26, 2002, when Mr. Ye's order became administratively final. This period expired on June 24, 2002—twenty-three years ago.

18.    During this 90-day period, the statute mandates that "the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). However, once this period expires without successful removal, the statute's command is equally clear: "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (emphasis added).

5

19.     The word "shall" creates a mandatory obligation, not a discretionary choice. Once the removal period expired without Mr. Ye's removal to China, ICE lost its general detention authority, and Mr. Ye was entitled to supervised release as a matter of law.

**China's Historical Refusal to Accept Deportees**

20.     China has maintained a documented policy of refusing to issue travel documents for its nationals subject to removal from the United States, particularly those who sought political asylum. This refusal has persisted for decades and shows no signs of change.

21.     Upon information and belief, there are upwards of 40,000 Chinese nationals in the United States with removal orders, with some estimates reaching 100,000. Despite these numbers, successful removals to China remain extremely rare, particularly for those who arrived before certain cutoff dates or sought political asylum.

22.     Recent reports from February 2025 indicate that some Chinese nationals have been sent to third countries rather than China, demonstrating the continued impossibility of direct removal. One Chinese national, Zheng Lijuan, was among 299 migrants flown to Panama rather than their countries of origin, highlighting the extreme measures taken when countries refuse repatriation.

**Mr. Ye Deep Ties to the United States**

23.    During the twenty-three years since his removal order became final, Mr. Ye has built a life, family, and community in the United States that demonstrates he is neither a flight risk nor a danger to the community.

24.    Mr. Ye has a Lawful Permanent Resident son, Longsheng Ye, born July 18, 1988, who is now father of two United States citizen children. He also a Lawful Permanent Resident daughter-in-law born in March 6, 1988.

25.    Mr. Ye has maintained continuous, lawful employment throughout his time in the United States. Right before his arrest, he was working as a farm worker providing essential labor benefiting the American consumer.

26.    Mr. Ye has dutifully filed taxes for over 26 years, contributing to the United States economy and demonstrating his integration into American society.

27.    Critically, Mr. Ye has no criminal arrests or convictions during his entire 23-year residence in the United States—not a single interaction with law enforcement that would suggest he poses any danger to the community.

**ICE's Arbitrary Detention Twenty-One Years After the Removal Period**

28.    The On September 16, 2025—twenty-three years after his removal order became final and the statutory removal period expired—ICE arrested Mr. Ye without warning at ICE facility when he went to report in.

29.    Upon information and belief, ICE has provided no evidence that:

- China has agreed to accept Mr. Ye's return;

- Travel documents have been obtained or are forthcoming;

- Any circumstances have changed making removal reasonably foreseeable;

- Mr. Ye poses any flight risk or danger to the community.

30. Instead, ICE appears to be engaging in arbitrary enforcement, detaining individuals with decades-old removal orders without any reasonable expectation of effectuating removal, likely for statistical or political purposes rather than any legitimate government interest.

## **LEGAL ARGUMENT**

### **COUNT I: VIOLATION OF PROCEDURAL DUE PROCESS AND REGULATORY REQUIREMENTS (*ACCARDI* DOCTRINE)**

31. Petitioners realleges and incorporates paragraphs 1-30 as if fully set forth herein.

32. The *Accardi* doctrine requires administrative agencies to follow their own regulations and rules; if they don't, their decisions may be set aside as unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

33. Even if detention authority existed—which it does not—ICE failed to follow required procedures under its own regulations, violating Mr. Ye's procedural due process rights.

34.    ICE promulgates rules or regulations that govern how decisions are to be made, it is bound to follow them, even if not constitutionally required. Failure to follow its own rules can violate due process and invalidate agency action.

35.    The regulations at 8 C.F.R. § 241.4 establish specific procedures for post-order custody reviews and detention decisions. Upon information and belief, ICE failed to Conduct proper custody reviews considering Mr. Ye's lack of criminal history; Assess whether changes in circumstances over twenty-three years affected detention authority; Consider mandatory factors including family ties, employment history, and community connections; or evaluate less restrictive alternatives to detention.

36.    Further, 8 C.F.R. § 241.13(i)(3) provides the following revocation procedures:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

37.     Respondents failed to appropriately "determine[] that there is a significant likelihood that [Petitioners] may be removed in the reasonably foreseeable future."

38.     Also, Petitioners were not "notified of the reasons for revocation of [their]... release" "[u]pon revocation."

39.     Further, Respondents did not "conduct an initial informal interview promptly after his ... return to ... afford [him] an opportunity to respond to the reasons for revocation in the notification."

40.     No record constitutes a determination even after Petitioners' arrests that there is a significant likelihood that they can be removed in the reasonably foreseeable future.

41.     The wholesale abandonment of regulatory procedures, combined with the arbitrary nature of detention two decades after the removal period, shocks the conscience and violates fundamental fairness.

## COUNT II: VIOLATION OF 8 U.S.C. § 1231 - DETENTION BEYOND STATUTORY AUTHORITY

42.     Petitioners realleges and incorporates paragraphs 1-41 as if fully set forth herein.

43.     The Immigration and Nationality Act creates a carefully structured detention scheme with mandatory temporal boundaries that ICE has flagrantly violated in detaining Mr. Ye.

**A. The Plain Language of Section 1231 Prohibits Mr. Ye's Current Detention**

44.    Under 8 U.S.C. § 1231(a)(1)(B)(i), when a removal order becomes administratively final, a 90-day "removal period" begins. The statute's command during this period is unequivocal: "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2) (emphasis added). The word "during" temporally limits mandatory detention to this specific 90-day window.

45.    When the removal period expires without successful removal, the statute dictates a mandatory result: "[I]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (emphasis added). Congress chose the mandatory "shall" rather than the permissive "may," leaving no discretion for continued detention absent specific statutory authorization.

46.    The Supreme Court has consistently recognized that "shall" creates mandatory obligations. In *Jennings v. Rodriguez*, 583 U.S. 281, 301 (2018), the Court emphasized that "the word 'shall' usually connotes a requirement" as opposed to discretion. This mandatory language forecloses any attempt by ICE to create detention authority where none exists.

47.    Mr. Ye 90-day removal period expired on June 24, 2002. For the past twenty-three years, he has been entitled to supervision, not detention, as a matter of statutory law.

## B. ICE Cannot Manipulate Statutory Time Limits Through Strategic Delay

48.    The government cannot circumvent these temporal limitations by waiting decades to arrest someone whose removal period has long expired. Federal courts have rejected such manipulation. As the Southern District of New York held in *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009), when addressing ICE's attempt to "arbitrarily trigger the removal period" by delaying arrest: ICE cannot manipulate statutory timelines to manufacture detention authority that has expired.

49.    Similarly, in *Ulysse v. Department of Homeland Security*, 291 F. Supp. 2d 1318, 1325 (M.D. Fla. 2003), the court rejected ICE's argument that the removal period begins upon arrest rather than when the order becomes final, finding "no indication in the statute or regulations" supporting this position and recognizing that accepting it would grant the agency unlimited discretion to extend detention indefinitely through strategic delays.

50.    Accepting the government's implied position—that it can detain Mr. Ye twenty-one years after the removal period expired—would create a regime of shadow detention authority. ICE could maintain lists of individuals with decades-

old removal orders and strategically detain them whenever politically expedient or

when seeking to bolster removal statistics, regardless of whether removal is

actually possible.

**COUNT III: VIOLATION OF DUE PROCESS
UNDER THE FIFTH AMENDMENT
AND *ZADVYDAS v. DAVIS***

51.     Petitioners realleges and incorporates paragraphs 1-50 as if fully set

forth herein.

52.     Even if this Court were to find some residual detention authority

under Section 1231(a)(6)—which Petitioners disputes—Mr. Ye's detention violates

the constitutional limits established by the Supreme Court in *Zadvydas v. Davis*,

533 U.S. 678 (2001).

**C. The Six-Month Presumptively Reasonable Period Expired Twenty
    Years Ago**

53.     In *Zadvydas*, the Supreme Court held that detention beyond six

months after the removal period expires is presumptively unreasonable unless the

government demonstrates removal is reasonably foreseeable. The Court established

this bright-line rule to avoid the serious constitutional problems raised by indefinite

civil detention.

54.     Critically, this six-month period begins when the 90-day removal

period expires, not when ICE chooses to effectuate physical detention. The

statutory framework and constitutional analysis are tied to fixed temporal markers, not the government's discretionary enforcement decisions.

55.    As the *Farez-Espinoza* court explicitly held: "the six-month period of detention authorized by statute and reviewed by *Zadvydas* commences on the date the order of removal becomes final, not the date of detention." 600 F. Supp. 2d at 500. This interpretation prevents ICE from circumventing constitutional protections through strategic delays.

56.    Mr. Ye's six-month presumptively reasonable period began on March 26, 2002 (when the 90-day removal period expired) and ended on September 26, 2002—over twenty-three years ago. Every day of Mr. Ye's current detention violates the constitutional framework established by *Zadvydas*.

### D. The Government Cannot Meet Its Burden of Demonstrating Reasonable Foreseeability

57.    After the six-month period expires, the government bears the burden of demonstrating by clear and convincing evidence that removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 701. The government cannot possibly meet this burden when:

      a.    Twenty-three years have passed without removal. The sheer passage of time creates an overwhelming presumption that removal is not reasonably foreseeable. If removal were possible, it would have occurred during the two decades since the order became final.

14

b. China has consistently refused to accept its nationals subject to removal from the United States, particularly those who sought political asylum. There is no evidence this policy has changed regarding Mr. Ye.

c. Upon information and belief, ICE has not obtained and cannot obtain travel documents from China for Mr. Ye's removal.

58.    The government cannot rely on speculation or hope that someday, somehow, China might change its position. *Zadvydas* requires concrete evidence that removal is reasonably foreseeable in the immediate future, not theoretical possibility at some indefinite point.

### E. The Government's Position Would Eviscerate Constitutional Protections

59.    If the government can restart the six-month clock whenever it chooses to detain someone, then *Zadvydas*'s protections become meaningless. Under this theory, ICE could release someone for decades, then re-detain them and claim a fresh six-month period of presumptively reasonable detention. This would mean someone whose removal order became final in 1970 could be detained today with the same constitutional justification as someone whose order became final yesterday.

60.    Such an interpretation defies both logic and law. The Supreme Court's concern in *Zadvydas* was preventing indefinite civil detention, which it

characterized as raising serious constitutional problems. The Court emphasized that detention becomes increasingly difficult to justify as time passes without removal. If ICE could reset the constitutional clock at will by strategically delaying detention, it would create precisely the indefinite detention problem *Zadvydas* sought to prevent.

## COUNT IV: ABSENCE OF ANY LEGITIMATE GOVERNMENT INTEREST IN DETENTION

61.    Petitioners realleges and incorporates paragraphs 1-60 as if fully set forth herein.

62.    The Fifth Amendment prohibits deprivation of liberty without due process of law. This protection extends to all persons within United States territory, including aliens subject to removal orders. *Zadvydas*, 533 U.S. at 693. In the civil detention context, the government must demonstrate a special justification that outweighs the individual's fundamental liberty interest.

### F.  Mr. Ye Poses No Flight Risk

63.    The government cannot credibly claim Mr. Ye poses a flight risk when they have:

- Resided continuously in the United States for over 27 years;

- Raised three U.S. citizen children who depend on him;

- Maintained continuous employment and paid taxes;

- Never attempted to evade immigration authorities;

16

64.    Persons with such deep roots in the community, facing no reasonable prospect of removal, has every incentive to remain and pursue available legal remedies rather than flee.

### G. Mr. Ye Poses No Danger to the Community

65.    Mr. Ye's pristine record over 27 years demonstrates they poses no danger whatsoever. They maintained continuous lawful employment; has stable family relationships; tax compliance for over a decade; and no history of violence, substance abuse, or any antisocial behavior.

66.    The government cannot manufacture a public safety justification where none exists. Mr. Ye has been a productive, law-abiding member of society for over three decades.

### H. Removal Is Not Reasonably Foreseeable

67.    As detailed above, removal to China is not reasonably foreseeable after twenty-three years of demonstrated impossibility. Detention cannot be justified to facilitate a removal that will never occur.

68.    The government's detention of Mr. Ye serves no legitimate purpose and violates both procedural and substantive due process. As the Supreme Court recognized in *Zadvydas*, detention's justification is "weak or nonexistent where removal seems a remote possibility at best." 533 U.S. at 690. After twenty-three years, removal is not merely remote—it is impossible.

## COUNT V: ARBITRARY AND CAPRICIOUS
## ACTION UNDER THE APA

69.    Petitioners realleges and incorporates paragraphs 1-68 as if fully set forth herein.

70.    ICE's detention of Mr. Ye constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The decision to detain someone after twenty-three years, without evidence of changed circumstances, without following required procedures, and without any legitimate purpose, represents the paradigm of arbitrary government action.

## IRREPARABLE HARM AND NEED FOR EMERGENCY RELIEF

71.    Every day of unlawful detention constitutes irreparable injury to Mr. Ye's fundamental liberty interests that cannot be adequately compensated through monetary damages. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects").

72.    The harm is particularly acute given Mr. Ye' age (61 years old), his role as father and grandfather to his son and grandchildren during their formative years, and the psychological trauma of indefinite detention after building a life in America for over two decades.

18

73.    Mr. Ye faces additional irreparable harm through the loss of employment that supports his family; the separation from his Lawful Permanent Resident Son while he is raising his two USC children and needs all the support he can get; deterioration of his physical and mental health in detention; and the loss of his home and stability built over decades.

74.    Mr. Ye is seriously ill due to his age and years of smoking. He was diagnosed with hyperlipidemia and paroxysmal A-fib. This has resulted in him having heart palpitations and frequent episodes of dizziness. The doctors have prescribed him apixpan every 12 hours, flecainide twice a day, and metoprolo succinate every day. The continued unconstitutional detainment of Mr. Ye could be detrimental to his health if he isn't being properly taken care of.

75.    The balance of hardships overwhelming favors Mr. Ye, as Respondents suffer no cognizable harm from complying with federal law and releasing someone who poses no flight risk or danger and cannot be removed.

76.    The public interest strongly favors enforcing statutory limits and constitutional protections. Permitting ICE to circumvent temporal limitations and detain people decades after removal periods expire undermines the rule of law and threatens the liberty of countless individuals with old removal orders.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

A. Issue a Writ of Habeas Corpus ordering Respondents to immediately release Mr. Ye from custody;

B. Declare that Mr. Ye's detention violates**:**

- 8 C.F.R §241.13's revocation procedures;

- *Accardi* Doctrine;

- 8 U.S.C. § 1231's temporal limitations;

- The Due Process Clause of the Fifth Amendment;

- The Supreme Court's holding in *Zadvydas v. Davis*;

- ICE's own regulations at 8 C.F.R. § 241.4;

- The Administrative Procedure Act;

C. Enter a permanent injunction prohibiting Respondents from re-detaining Mr. Ye absent clear and convincing evidence that removal to China has become imminently feasible;

D. In the alternative**,** order an immediate bond hearing at which the government bears the burden of proving by clear and convincing evidence that Mr. Ye poses a flight risk or danger that cannot be mitigated by conditions of release;

E.  Award Petitioner his costs and reasonable attorneys' fees pursuant to the

Equal Access to Justice Act, 28 U.S.C. § 2412;

F.  Retain jurisdiction to ensure compliance with this Court's orders;

G.  Grant such other and further relief as this Court deems just and proper.

Dated: October 3, 2025

Respectfully submitted,

*/s/Brian Scott Green*
Brian Scott Green
Colorado Bar ID # 56087
Law Office of Brian Green
9609 S University Boulevard, #630084
Highlands Ranch, CO 80130
Phone (443) 799-4225
BrianGreen@greenUSimmigration.com

/s/ Theodore N. Cox (with permission)
*Theodore N. Cox, Esq.
Law Office of Theodore N. Cox
325 Broadway, Suite 201
New York, New York 10007
(212) 925-1208
tedcoxecf@gmail.com
*Motion for admission *pro hac vice*
forthcoming

## VERIFICATION

I, Brian Scott Green, co-counsel for Petitioner Zhuliang Ye, hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in this petition are true and correct to the best of my knowledge, information, and belief, based upon the records available and information provided by Petitioners.

Dated: October 3, 2025

Respectfully submitted,


*/s/Brian Scott Green*
Brian Scott Green