IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ZHULIANG YE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV-25-1230-D |
| ) | |
| PAMELA BONDI, Attorney General, et al., ) | |
| ) | |
| Respondents. ) | |

# REPORT AND RECOMMENDATION

Petitioner Zhuliang Ye, represented by counsel, filed a Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief. (Doc. 1).[1] Chief United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 10). Respondents filed a Response in Opposition to Petitioner's Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. (Doc. 16). Petitioner filed a Reply. (Doc. 17).[2] For the reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and released from custody immediately.

---

[1] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[2] Respondents' Motion to Strike Petitioner's Reply (Doc. 18) is **DENIED**. Petitioner's counsel is reminded of their obligation to comply with the Local Rules regarding the length of briefs and requests for leave to file oversized briefs. Respondents' counsel, Mister Evans, is cautioned about the legal writing karma that flows from applying excessive snark to an adversary's immaterial cut and paste errors.

I.      **Factual Background and Procedural History**

Petitioner is a native and citizen of the People's Republic of China who unlawfully entered the United States in 1998. (Doc. 1, at 3, 5; Doc. 16, at Ex. 3, at 2). After his arrival, he filed an application for political asylum. (Doc. 1, at 5). On June 28, 1999, an Immigration Judge denied his application for relief and ordered him removed to China. (*Id.*; Doc. 16, at Ex. 3, at 2). On March 26, 2002, the Board of Immigration Appeals dismissed Petitioner's appeal, making his removal order final. (Doc. 1, at 5; Doc. 16, at Ex. 3, at 2). Petitioner was taken into the custody of Immigration and Customs Enforcement ("ICE") on February 28, 2011. (Doc. 16, at Ex. 3, at 2). On December 7, 2011, Petitioner was placed on an Order of Supervision ("OOS") and released from ICE custody. (*Id.*)

On September 16, 2025, ICE took Petitioner back into custody when he appeared for a routine check-in under his OOS. (Doc. 1, at 7; Doc. 16 at Ex. 3, at 2; *id.* at Ex. 4, at 1). Petitioner has no criminal arrests or convictions during his 23-year residence in the United States. (Doc. 1, at 7). Respondents have declared that Petitioner was re-detained "because he had a final order of removal and it was believed that he could be removed to China or a third country." (Doc. 16, at Ex. 3, at 2). Respondents have declared that Petitioner was informed "that he is being taken back into custody with the intent to obtain a travel document and to remove him." (*Id.* at Ex. 4, at 2). Respondents state that the deportation officer "would also likely have explained that [ICE] did not know exactly how long it would take to get travel documents and arrange removal." (*Id.*) They further state that "[a]fter this informal discussion, [Petitioner] would have been given the opportunity

2

to respond while we gathered his property and processed him into custody" and that "[i]n accordance with 8 C.F.R. § 241.13(i)(3), [Petitioner] was informed of the reason for his revocation and was given the opportunity to respond during this informal interview." (*Id*.)

Respondents declare that

10.  Following [Petitioner's] arrest, [ICE] gathered the relevant paperwork and compiled a travel document request.

11.  On October 27, 2025, a travel document request was sent to the headquarters Removal and International Operations ("HQ RIO") group. HQ RIO then sends the request to the People's Republic of China.

12.  HQ RIO has indicated that over 2,100 Chinese nationals have been removed in fiscal year 2025. This is more than 4 times the number of Chinese nationals removed in fiscal year 2024.

13.  Removals to China are being conducted via commercial removal. The People's Republic of China is generally issuing travel documents for removal.

14.  Based on the amount of recent removals and the successful issuance of travel documents, [an ICE deportation officer] believe[s] [Petitioner's] removal to China in the near future is likely.

(*Id*. at Ex. 3, at 3)

Petitioner alleges that "China has maintained a documented policy of refusing to issue travel documents for its nationals subject to removal from the United States, particularly those who sought political asylum. This refusal has persisted for decades and shows no signs of change." (Doc. 1, at 6). Petitioner further alleges that "ICE has provided no evidence that: [1] China has agreed to accept his return; [2] [t]ravel documents have been obtained or are forthcoming; [3] [a]ny circumstances have changed making removal reasonably foreseeable; [4] [Petitioner] poses any flight risk or danger to the community."

3

(*Id*. at 7-8). Petitioner alleges that "ICE appears to be engaging in arbitrary enforcement, detaining individuals with decades-old removal orders without any reasonable expectation of effectuating removal, likely for statistical or political purposes rather than any legitimate government interest." (*Id*. at 8).

## II. Petitioner's Claims

In Count One, Petitioner claims a violation of Due Process and regulatory requirements, asserting that "ICE failed to follow required procedures under its own regulations," namely 8 C.F.R. § 241.4 and § 241.13(i)(3). (Doc. 1, at 8). Specifically Petitioner alleges that "Respondents failed to appropriately 'determine[] that there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future.'" (*Id*. at 10).

In Count Two, Petitioner contends that his detention by Respondents violates 8 U.S.C. § 1231 because following the 90-day removal period his release on supervision is mandatory. (*Id*. at 10-13).

In Count Three, Petitioner states that his detention violates his right to Due Process under the Fifth Amendment as established in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id*. at 13-16).

In Count Four, Petitioner alleges a separate Due Process violation because of the "absence of any legitimate government interest in detention" because Petitioner is not a flight risk nor a danger to the community, nor is his removal reasonably foreseeable. (*Id*. at 16-18).

In Count Five, Petitioner alleges that his detention constitutes arbitrary and capricious action under the Administrative Procedure Act. (*Id*. at 18).

Petitioner also requests emergency relief because "[e]very day of unlawful detention constitutes irreparable injury to [his] fundamental liberty interests that cannot be adequately compensated through monetary damages." (*Id*.)

Petitioner seeks relief including a writ of habeas corpus ordering his immediate release from custody, declaratory relief, a permanent injunction "prohibiting Respondents from re-detaining [him] absent clear and convincing evidence that removal to China has become imminently feasible," an immediate bond hearing, and an award of costs and attorneys' fees. (*Id*. at 20-21).

Respondents are sued in their official capacities. (Doc. 1, at 3-4).

### III.   Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas*, 533 U.S. at 687; *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas."); *Head v. Keisler*, No. 07-CIV-402-F, 2007 WL 4208709, at *2 (W.D. Okla. Nov. 26, 2007) (determining that "[t]his Court has subject matter jurisdiction over" unconstitutional detention in immigration-related § 2241 habeas petition).

## IV. Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

Title 8, Section 1231(a)(2)(A) of the United States Code mandates that "the Attorney General shall detain" an alien who is ordered to be removed from the country. However, the length of detention cannot be indefinite: in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) " the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.* *See Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody.").

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision" under certain conditions and restrictions. 8 U.S.C. § 1231(a)(3). *See also* 8 C.F.R. § 241.5 (setting forth conditions of release after removal period).[3] Release on supervision may be revoked and the alien returned to custody

---

[3] An exception exists for certain aliens, such as those who have violated criminal law, who "may be detained beyond the removal period." § 1231(a)(6); *see Zadvydas*, 553 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)); *Head,* 2007 WL 4208709, at *2 ("If an alien is not deported during the 90-day removal period, certain classes of aliens, including

6

if the alien violates the conditions of supervised release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). The alien is entitled to be notified of the reasons for revocation of his release, an initial informal interview, and an opportunity to respond. § 241.13(i)(3).

## V.     ICE Failed To Abide By Its Regulations When It Revoked Petitioner's OOS.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

In Count One, Petitioner alleges that Respondents failed to comply with 8 C.F.R. § 241.13(i)(3) because ICE "failed to appropriately 'determine[] that there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future.'" (Doc. 1, at 10). The undersigned agrees.

Respondents do not allege that Petitioner violated any conditions of his OOS, (*see* Doc. 16), so it appears that Respondents rely solely on the "changed circumstances" prong

---

inadmissible aliens and criminal aliens, may continue to be subject to detention if they have not yet been removed."). This exception is not applicable here, as it is undisputed that Petitioner has no criminal history. (Doc. 1).

7

of § 241.13(i)(2) as the justification for revocation of his release.[4] However, Respondents have failed to demonstrate that there were any such changed circumstances nor that ICE determined there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future before revoking Petitioner's OOS and detaining him. The declaration that has been provided by Respondents to the court, six weeks after Petitioner's detention, states merely that Petitioner was re-detained "because he had a final order of removal and it was believed that he could be removed to China or a third country." (Doc. 16, at Ex. 3, at 2). This statement does not even make a conclusory allegation that satisfies the regulatory standard of a determination that "there is a <u>significant</u> likelihood that the alien may be removed <u>in the reasonably foreseeable future</u>." 8 C.F.R. § 241.13(i)(2). Indeed, it is apparent that ICE did not have a factual basis for making such a claim.

Respondents apparently argue that the "changed circumstances" causing ICE to believe Petitioner "could be removed" include their proffered information that

---

[4] Significantly, Respondents have not presented the court with a copy of the 2025 Notice of Revocation of Release, which should have been provided to Petitioner and stated the reasons for revocation of release. *See* 8 C.F.R. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release."); § 241.13(g) ("[ICE] shall issue a written decision . . . regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. [ICE] shall provide the decision to the alien, with a copy to counsel of record, by regular mail."). Rather, an ICE deportation officer declared that he took Petitioner into custody on September 16, 2025, and that "[his] practice with arrests of this nature was to inform the alien that he is being taken back into custody with the intent to obtain a travel document and to remove him." (Doc. 16, at Ex. 4, at 1-2). Respondents state that "[i]n accordance with 8 C.F.R. § 241.13(i)(3), [Petitioner] was informed of the reason for his revocation and was given the opportunity to respond during this informal interview." (*Id.* at 2).

> . . . over 2,100 Chinese nationals have been removed in fiscal year 2025. This is more than 4 times the number of Chinese nationals removed in fiscal year 2024.
>
> [and]
>
> Removals to China are being conducted via commercial removal. The People's Republic of China is generally issuing travel documents for removal.

(Doc. 16, at Ex. 3, at 2-3). These statistics and generalities are insufficient to establish that Petitioner's individual likelihood of removal has increased since his detention and release on an OOS in 2011. *See Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a non-citizen. . . who has been granted supervised release is governed by ICE's own regulations requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.") (citing 8 C.F.R. § 241.13(i)(2)) (emphasis added). Respondents have provided no information about what barriers to Petitioner's removal existed in 2011, how those barriers have been removed, how Petitioner's circumstances are similar to those 2,100 Chinese nationals that have now been removed from the United States in 2025, and what about Petitioner's case would cause China to include him in the group of people for whom they are issuing travel documents. *See Qui v. Carter*, 2025 WL 2770502, at *4 (D. Kan. Sept. 26, 2025) ("Respondents also note that a travel document has been obtained for a different Chinese alien whose petition is before this Court; but respondents have not explained how the two petitioners' circumstances are so similar that the receipt of one document suggests that the other document is forthcoming.").

To bolster the argument that Petitioner's "removal to China in the near future is likely," (Doc. 16, at Ex. 3, at 3), ICE also asserts that "[f]ollowing [Petitioner's] arrest, [ICE] gathered the relevant paperwork and compiled a travel document request," which was sent to ICE headquarters on October 27, 2025, *i.e.*, more than a month after Petitioner was detained. (*Id*. at 2). Respondents assert that headquarters "then sends the request to the People's Republic of China." (*Id*.) Again, this information about ICE's internal process lacks sufficient specificity with regard to Petitioner's likelihood of removal. Respondents do not state if or when ICE headquarters actually sent the request to China, where the request was sent – for instance, a consulate or embassy – whether it was received, or whether China has made any response. In the absence of further factual declarations from Respondents, the undersigned assumes that none of these actions have occurred. There is nothing about local ICE authorities sending a travel document request for Petitioner to a particular ICE department that constitutes "changed circumstances" making his removal any more likely than it ever was. *See Yee S. v. Bondi*, 2025 WL 2879479, at *5 (D. Minn. Oct. 9, 2025) (finding that "the record does not support a determination that Petitioner is significantly likely to be removed in the reasonably foreseeable future" when "Respondents simply repeat the vague and conclusory assertions that 'ICE is in the process of obtaining a travel document'"); *Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sept. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own

10

requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ").

A district court in this Circuit recently encountered a similar set of facts, observing that

> the fact that officials have successfully removed others to China recently does not necessarily bear on the likelihood of obtaining travel documentation for petitioner, absent some evidence specific to petitioner's case or at least evidence concerning the obstacles to removal that have been overcome recently concerning those aliens on the recent repatriation flights.

*Liu v. Carter*, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025). The court further stated that

> respondents have again failed to discuss the particular documentation needed for petitioner – indeed, respondents have not provided any details about why that documentation could not be obtained in the past, nor have they attempted to show why obtaining that particular documentation is more likely this time around. Furthermore, the fact that officials did not even request documentation for petitioner from the Chinese authorities until May (and did not get that request corrected until June) undercuts any suggestion that petitioner's release was in fact revoked in January because the likelihood of obtaining that documentation had increased to any material degree.

*Id.* at 3. Thus, the court held that "there were no changed circumstances that could have led officials to determine that there was a significant likelihood that petitioner would be

11

removed in the reasonably foreseeable future, as required by law to justify a revocation of release." *Id*. at 2. The court "conclude[d] that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)" and granted the habeas petition. *Id*. at 3.

The undersigned similarly finds that Respondents have failed to show that ICE abided by its own regulations in making the decision to revoke Petitioner's OOS, making the revocation unlawful. "ICE, like any agency, has the duty to follow its own federal regulations. As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)); *see Qui v. Carter*, 2025 WL 2770502, at *1-2 (D. Kan. Sept. 26, 2025) (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective).

Based on ICE's violations of its own regulations, the undersigned concludes that Petitioner's detention is unlawful and that his release is appropriate under 28 U.S.C. § 2241(c)(3). *See Tran v. Bondi*, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (finding that Petitioner showed his re-detention did not comply with the requirements set forth by 8 C.F.R. § 241.13 and granting habeas relief); *Soryadvongsa v. Noem*, 2025 WL 3126821, at *3 (S.D. Cal. Nov. 8, 2025) ("The government's authority to civilly detain anyone is strictly confined [by the INA regulations]. [Petitioner] has carried his burden of

establishing that ICE exceeded those uncompromising bounds and that his custody is unlawful. Thus, he must be set free."); *Phongsavanh v. Williams*, --- F. Supp. 3d ----, 2025 WL 3124032, at *6 (S.D. Iowa Nov. 7, 2025) (holding that "[t]he Government has failed to carry its burden under 8 C.F.R. § 241.13(i)(2). That regulation embodies the Executive Branch's own procedural requirements, and agencies must comply with the rules they promulgate" and granting habeas relief); *Rasakhamdee v. Noem*, 2025 WL 3102037, at *5 (S.D. Cal. Nov. 6, 2025) ("Government agencies are required to follow their own regulations. ICE failed to do so here. The Court's research indicates that every district court, except two, to consider the issue has 'determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'") (internal citation and footnote omitted); *C.M. v. Maples*, 2025 WL 3102037, at *5 (S.D. Ind. Nov. 5, 2025) (same); *E.M.M. v. Almodovar*, 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025) (holding that "[i]f the Government's violation of its own regulations culminates in an alien's detention, due process may require that alien's release" and granting habeas relief); *Yee S.*, 2025 WL 2879479, at *6 (ordering release because Petitioner has shown that ICE's re-detention of him . . . violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Roble*, 2025 WL 2443453, at *5 (holding that "[i]t goes without saying that ICE, like all government agencies, must follow its own regulations" and ordering release based on violation of 8 C.F.R. § 241.13(i)); *Sarail A. v. Bondi*, 2025 WL 2533673 (D. Minn. Sept. 3, 2025) (ordering release based on violation of 8 C.F.R. § 241.13(i)).

## VI. Petitioner's Other Causes of Action and Requests for Relief

Because the undersigned recommends habeas relief based on Petitioner's Count One, the undersigned does not address Petitioner's remaining arguments as to how the revocation of his release or his detention is otherwise unlawful (Counts Two through Five). The undersigned also declines to address Petitioner's request for declaratory judgment and permanent injunctive relief. Adoption of this Report and Recommendation will render moot Petitioner's request for emergency relief.

## VII. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Verified Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.** The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated.").

**The court advises the parties of their right to object to this Report and Recommendation by November 25, 2025**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[5] The Court further advises the parties that failure to make timely objection to

---

[5] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he

this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 18th day of November, 2025.

*Amanda L. Maxfield*
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").